905 F.2d 1538
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The SPITZER BUILDING COMPANY, Plaintiff-Appellant,
v.
DOVER ELEVATOR COMPANY, Defendant-Appellee.
 No. 89-3738.
 United States Court of Appeals, Sixth Circuit.
 June 29, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges; and JULIAN A. COOK, Jr., District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, The Spitzer Building Company, appeals the judgment for defendant, Dover Elevator Company, in this breach of contract action. The court, following a bench trial, awarded defendant $3,500 on its counterclaim against plaintiff for anticipatory breach of contract. We affirm.
 
 I.
 
 2
 Plaintiff owns and operates an office building, The Spitzer Building, in Toledo, Ohio. The building's six elevators, three passenger elevators in the front lobby and two passenger and one freight elevator in the back, were installed in the 1920s and were modernized in the 1950s.
 
 
 3
 Otis Elevator Company (Otis), defendant's competitor, maintained the elevators pursuant to a "full maintenance" contract with plaintiff after the 1950 modernization and until 1969. In 1969, plaintiff replaced the Otis full maintenance contract with a "parts, oil and grease" contract from Kerscher Elevator Company (Kerscher), defendant's predecessor. Plaintiff replaced the "full maintenance" agreement with the more limited and cheaper "parts, oil and grease" contract because the building had several vacancies and the elevators were operating satisfactorily.
 
 
 4
 Beginning in 1975, the three front passenger elevators experienced operational problems and attempts by Kerscher to make repairs proved unsatisfactory. The problems got progressively worse. Fifty percent of the problems involved the door operator system. In 1979, plaintiff rejected Kerscher's recommendation that the door operator system be upgraded. In 1980, the "parts, oil and grease" contract was modified and plaintiff opted for the scaled-down economy version of an oil and grease contract.
 
 
 5
 On June 1, 1981, the oil and grease contract between plaintiff and Kerscher was replaced by a "full maintenance" contract. By its terms it was renewable annually and could be terminated, upon thirty-day notice, effective June 1. The contract included twenty-four hour call back privileges and provided, in pertinent part:
 
 
 6
 We will systematically and regularly examine, adjust, lubricate as required, and if conditions warrant, repair and replace the following:
 
 
 7
 Elevator machine; elevator motor; generator; controller parts; gears; worms; bearings; rotating elements; thrusts; brake magnet coils; brake magnet stators; brake shoes and linings; commutators and brushes; windings and coils; contacts and magnet frames; resistance for motor and operator circuits.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 We shall not be required to make repairs or renewals necessitated because of negligence or misuse of the machinery, equipment or car due to any other cause beyond our control except ordinary wear.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 The following items of equipment are not included in this agreement: Refinishing, replacing, or repairing of elevator car enclosures, car door panels, hoistway enclosures, hydraulic cylinder and all underground piping, hoistway door panels, frame and sills.
 
 
 14
 The contract also included the repairs outlined in "Attachment A." Attachment A set forth a list of nine repairs Kerscher agreed to make to the three front passenger elevators for no extra charge; the repairs were to be completed by December 31, 1981.
 
 
 15
 On April 14, 1982, Kerscher notified plaintiff that the work set forth in Attachment A was completed. The trial court found that "plaintiff did not challenge Kerscher's representation and believed that the work had been done. The items which could be confirmed by visual inspection had been done."
 
 
 16
 The full maintenance contract was renewed annually. The elevators still had mechanical problems; plaintiff called Kerscher frequently to report problems with the elevator service but never complained to Kerscher about the service or maintenance provided.
 
 
 17
 On December 24, 1984, Kerscher assigned the full maintenance contract to defendant, Dover Elevator Company. The contract of assignment provided:
 
 
 18
 (c) Seller alone shall continue to remain and be responsible for all of its past, current and future liabilities of any kind whatsoever, whether accrued, contingent or otherwise, including without limitation:
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 (iv) the obligation to comply with all the responsibilities terms and conditions of the service and maintenance contract listed in Exhibit "A" up to the effective time of closing.
 
 
 22
 The trial court found this clause "obligated Kerscher to comply with all of the terms and conditions of the maintenance contract through January 1, 1985 and imposed only a prospective duty on the part of defendant."
 
 
 23
 Plaintiff was given written notice of the contract assignment to defendant on January 1, 1985. Plaintiff thought service would improve; however, the same problems persisted.
 
 
 24
 By 1985, the elevators needed extensive repair and renovation. Defendant submitted at least three proposals to replace existing equipment, particularly door operation equipment; all proposals were rejected by plaintiff. Plaintiff contacted Otis, the company that serviced the elevators before 1969, and Otis submitted a repair proposal for the three front elevators in September 1985 with the understanding that plaintiff would sign a five year maintenance contract with Otis. Otis had required that $64,675 worth of repairs be done before it would enter into a maintenance contract. The repair work was done and a full maintenance agreement was signed with Otis on February 28, 1986. Following the repairs, the elevators ran satisfactorily.
 
 
 25
 During this time, defendant continued to provide maintenance under its contract with plaintiff. On February 26, 1986, plaintiff notified defendant that it was cancelling its full maintenance agreement effective March 1, 1986 because of defendant's failure to perform its obligations under the contract.
 
 II.
 
 26
 Plaintiff then brought this breach of contract action to recover the $64,675, the cost of the pre-maintenance contract repairs completed by Otis. Plaintiff claimed the repairs made by Otis were the repairs listed in Attachment A to the full maintenance contract of 1981 and purportedly completed by Kerscher in 1982. Plaintiff contended that defendant assumed all obligations of Kerscher under the assignment contract of January 1985 but failed to perform the required maintenance and repairs through February 1986. Plaintiff also sought lost profits of $25,000 because two tenants vacated the premises, primarily because of the poorly operating elevators. The claim for lost profits was dismissed by the trial court and not raised as an issue on appeal.
 
 
 27
 Defendant filed a counterclaim claiming plaintiff anticipatorily breached its maintenance contract with defendant. The contract provided that either party could cancel the agreement upon thirty days notice effective June 1. Defendant claimed plaintiff breached the contract by giving defendant notice in late February 1986 that its contract was terminated effective March 1, 1986, and that plaintiff owed four months of compensation at the monthly rate of $1,240.49 for a total of $4,961.96.
 
 
 28
 Following a bench trial, the trial court found in favor of defendants on plaintiff's breach of contract claim and awarded defendants $3,500 on its counterclaim against plaintiff for anticipatory breach of contract.
 
 III.
 
 29
 After a careful review of the record and after considering the district court's findings of fact and conclusions of law, we AFFIRM the judgment dismissing the plaintiff's claim and awarding judgment against the plaintiff in the defendants' counterclaim for the reasons set forth in the district court's well-written and soundly reasoned opinion.